**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-21541-BLOOM/Elfenbein**

SANTINO T. DARLING,

   Plaintiff,

v.

LUIS ZAVALETA,
a Police Officer with the Homestead City Police Department, and
HENRY QUINTERO,
a Police Officer with the Homestead City Police Department,

    Defendants.
_____ /

## ORDER DISMISSING COMPLAINT

**THIS CAUSE** is before the Court upon a review of *pro se* Plaintiff Santino T. Darling's ("Darling") Complaint, ECF No. [1]. Darling also filed a Motion for Leave to Proceed *In Forma Pauperis*, ("Motion"), ECF No. [3]. Because Darling is a *pro se* litigant who has not paid the required filing fee, the screening provisions of 28 U.S.C. § 1915(e) apply. Under the statute, courts are permitted to dismiss a suit "any time [] the court determines that. . . (B) the action or appeal. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Moreover, a "district court does, and indeed must, have the power to control and direct the cases on its docket." *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. 1981) (citations omitted). Upon a review of the Complaint, the Court concludes it must be dismissed for failure to state a claim upon which relief may be granted.

Case No. 24-cv-21541-BLOOM/Elfenbein

## I. BACKGROUND

The Complaint alleges that on July 24, 2023, Darling, then a minor, and three of his friends were detained by Officers Luis Zavaleta ("Zavaleta"), and Henry Quintero ("Quintero"), together ("Defendants"). *See generally* ECF No. [1]. Darling alleges his Fourth Amendment rights were violated, ending in his unlawful and false arrest. *Id*. Darling alleges he was walking to the house of his friend, Yandel DeJesus ("DeJesus"), where other friends, Antonio March ("March")[1] and Kevin Rivas ("Rivas"), were already visiting. *Id*. ¶¶ 5 – 7. DeJesus began "horsing around" and pointed his Galaxy Smartphone as if it were a gun at Darling, Antonio, and Rivas in the front yard. *Id*. ¶ 8, n.3. At this moment, Zavaleta parked at the house, took out his taser and addressed the group. *Id*. ¶ 9. Zavaleta then ordered the group to sit and called for backup. Quintero arrived and the group was advised they would be subjected to pat down searches. *Id*. ¶ 28. After an alleged pat down search of Rivas, Darling alleges Quintero conducted a search upon him wherein he grabbed Darling's groin. *Id*. ¶¶ 30, 35-36. Darling alleges he panicked, and upon his second attempt to end the encounter by pulling away, "Zavaleta steps up and assists [] Quintero in slamming [Darling] into the wall." *Id*. ¶¶ 38-40. After that interaction, Quintero completed the pat down search. Darling claims he was also arrested for disorderly conduct and resisting arrest without violence. *Id*. ¶¶ 45-46.

Darling alleges that there was no probable cause for Zavaleta to believe he carried a weapon. Darling alleges he was not the one who had the phone in his hand as the phone was pointed at him. As such, there could not have had reasonable suspicion that he was armed with a

---

[1] The Complaint initially refers to Antonio March solely as "Antonio." ECF No. [1] ¶ 7. Later, he is referred to as Mr. March. *Id*. ¶ 106.

2

weapon, which was made clear in the arrest affidavit.[2] *Id.* ¶ 67-75. Further, Darling alleges that while waiting for Quintero to arrive, Zavaleta turned to DeJesus and said, "I know what you have in your pocket." *Id.* ¶ 20. When DeJesus asked "what do you mean," Zavaleta replied "I saw you with a gun." *Id.* ¶¶ 21-22. Darling claims this belies an assertion that Zavaleta had reasonable suspicion that Darling possessed a firearm as his attention was directed to DeJesus alone, therefore, the pat down search violated the Fourth Amendment. *Id.* ¶ 118.

The Complaint asserts five Counts pursuant to 42 U.S.C. § 1983 against Quintero and Zavaleta acting in both their official and individual capacities:

> Count 1: Violation of the Fourth Amendment for detaining Darling without reasonable suspicion that he was armed with a weapon (against Zavaleta);
> Count 2: Violation of the Fourth Amendment against Zavaleta by directing Quintero to search Darling (against Zavaleta):
> Count 3: Violation of the Fourth Amendment for conducting a search without Reasonable Suspicion (against Quintero);
> Count 4: Violation of the Fourth Amendment through use of excessive force (against Quintero and Zavaleta); and
> Count 5: Violation of the Fourth Amendment for a false arrest (against Zavaleta).
> *See Id. Generally.*

Darling seeks $150,000.00 in compensatory, punitive, and nominal damages from Quintero and Zavaleta, and seeks to be reimbursed for all costs associated with the pre-trial intervention program he entered because of these events. *Id.* at 17, ¶ 54. Darling also seeks an order requiring Quintero and Zavaleta to receive additional training with respect to the following: juvenile offenders; protected speech under the First Amendment to the United States Constitution; probable cause and pat down searches for individuals suspected of possessing a weapon; less violent techniques for pat down searches; providing truthful statements to fellow officers; "probable cause to arrest for disorderly conduct and resisting an officer without violence; and sensitivity training;.

---

[2] Darling has not filed the arrest affidavit he cites to in his Complaint. Nor has Darling provided information as to the related case(s) on his Civil Cover Sheet as required pursuant to Local Rules of the United States District Court for the Southern District of Florida, L.R. 3.3.

*Id*. at 17. Darling also requests that Quintero and Zavaleta provide "[Darling] and his friends a public apology." *Id*.

## II. LEGAL STANDARD

### A. Proceedings *in Forma Pauperis*

Fundamental to our system of justice is that the courthouse doors will not be closed to persons based on their inability to pay a filing fee. Congress has provided that a court "may authorize the commencement . . . or prosecution of any suit, action or proceeding . . . or appeal therein, without the prepayment of fees . . . therefore, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees. . . ." 28 U.S.C. § 1915(a)(1); *see Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004) (interpreting statute to apply to all persons seeking to proceed *in forma pauperis*).

### B. Examination Under the Provisions of 28 U.S.C. § 1915(e)(2)

In addition to the required showing that the litigant, because of poverty, is unable to pay for the court fees and costs upon a motion to proceed *in forma pauperis* the Court is required to examine whether "the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint satisfies any of the three enumerated circumstances under Section 1915(e)(2)(B), the Court must dismiss the complaint.

In discussing what is frivolous in the context of 28 U.S.C. § 1915(e)(2)(B)(i), the Eleventh Circuit has held that "[a] district court may conclude a case has little or no chance of success and dismiss the complaint before service of process when it determines from the face of the complaint that the factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).

In determining whether an action fails to state a claim on which relief may be granted, the following standards are relevant. A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Importantly, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and [are] liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "But the leniency accorded *pro se* litigants does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading to sustain an action." *Matthews, Wilson & Matthews, Inc. v. Capital City Bank*, 614 F. App'x 969, 969 n.1 (11th Cir. 2015) (citing *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)).

## III. DISCUSSION

### A. Claims Brought Under Both Individual and Official Capacity Pursuant to 42 U.S.C. § 1983

Darling's Complaint is brought against Quintero and Zavaleta in both their individual and official capacities, pursuant to 42 U.S.C. § 1983. ECF No. [1] at 2-3, 17. However, individual and

official capacity claims are distinct actions. To state a claim under § 1983 in an individual capacity action, a plaintiff must "show that an official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Blackshear v. City of Miami Beach*, 799 F. Supp. 1338, 1344 (11th Cir. 2011) ("In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law. A person acts under color of state law when he acts with the authority possessed by virtue of his employment with the state." (citations omitted)); *see also* 42 U.S.C. § 1983.

An official capacity claim requires more. In *Monell v. Dept's of Social Servs. of City of New York*, 436 U.S. 658 (1978), the Court provided that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. Official capacity suits are therefore generally "another way of pleading an action against an entity of which an officer is an agent." *Id*. n. 55. It is when the entity is a "moving force" behind the alleged deprivation that liability may attach. *Id*. at 695.

In *Kentucky v. Graham*, the Court clarified that the distinction between official capacity and individual capacity claims creates a distinction with respect to permissible damages sought by a plaintiff. 473 U.S. at 167. If a plaintiff prevails in a suit against an official acting in their individual capacity, "an award of damages . . . can be executed *only* against the official's personal assets[.]" *Id*. at 166 (emphasis added). However, in an official capacity claim under § 1983 "the real party in interest is the entity" and a plaintiff "must look to the government entity itself" not against an individual personally. *Id.*

### i. Official Capacity Claims Fail

Darling's claims against Quintero and Zavaleta in their official capacities must be dismissed because at no point in his Complaint has he alleged a policy or custom under which an official capacity claim may be brought. In each of the five Counts, Darling sets forth allegations with respect to either or both Defendants without a single reference to a policy or to the "edicts or acts [that] may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Accordingly, as this element for an official capacity claim is missing, Darling's Complaint against Quintero and Zavaleta in their official capacities fails. The Complaint will be examined under the provisions of 28 U.S.C. § 1915(e)(2) with respect to Counts 1 through 5 solely as individual capacity claims. Furthermore, as stated in *Graham v. Connor*, 490 U.S. 386 (1989) "'[t]he first inquiry in any § 1983 suit [is] to isolate the precise constitutional violation with which [the defendant] is charged.'" *Id*. at 394 (citing *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, (1979)).

### ii. Count 1: Unlawful Detention in Violation of the Fourth Amendment

The factual allegations underlying Count 1 are as follows: Darling alleges the reason he was detained was that Zavaleta believed he "observed a male holding an object that appeared to look like a firearm." ECF No. [1] ¶ 68. Darling concedes that at least one of the friends was "horsing around" and pointed his phone at the others which Zavaleta observed, and believed the phone was a gun. *Id*. ¶ 8. Darling alleges that "Zavaleta knew with specificity" that DeJesus had an object thought to be a firearm, negating any finding that Zavaleta could have a reasonable suspicion that Darling may in possession of a firearm or weapon as well. *Id*. ¶¶ 70-71.

With respect to whether Darling's detention was constitutionally permissible, "the Supreme Court has [] made crystal clear, individualized suspicion is not an absolute prerequisite for every constitutional search or seizure." *U.S. v. Lewis*, 674 F.3d 1298, 1306-07 (11th Cir. 2012) (citing *Samson v. California*, 547 U.S. 843, 855 (2006)). "'The touchstone of the Fourth

Amendment is reasonableness, not individualized suspicion.'" *Id*. (citing *Samson*, 547 U.S. at 848). In *Lewis*, the Eleventh Circuit held that it was reasonable for officers to detain an individual who was not believed to carry a weapon if they believed another person within a group of individuals was. Furthermore, the court held that is reasonable for officers "to control the movements of nearby associates and exercise command over the situation once the officers had reasonable suspicion of criminal activity that warranted further investigation." 674 F.3d at 1308. Here, even if as Darling alleges, the officers did not have individualized suspicion that he possessed a firearm, Darling "was not some unrelated bystander" rather, he was associated with the person the officers believed pointed a gun at the others. *Id*. at 1309. Consistent with *Lewis*, it was therefore permissible for Zavaleta to detain Darling even absent an individualized suspicion, as alleged. Accordingly, Count 1 is due to be dismissed.

### iii.     Count 2: Unlawful Direction of a Pat Down Search

Next, Darling's claim in Count 2 that Zavaleta acted with reckless disregard for the truth by directing Quintero to conduct a pat down search on him also fails. Darling alleges that Zavaleta had no articulable basis to believe he possessed a firearm, therefore "no information" could be conveyed to Quintero as he arrived on the scene to establish a reasonable suspicion that Darling possessed a firearm. ECF No. [1] ¶¶ 73-74.

This fails to isolate the precise constitutional violation alleged and fails to recognize that the constitutional standard that governs Fourth Amendment rights is an objective standard of reasonableness. *Graham v. Connor*, 490 U.S. 386, 394 (1989). As discussed, the touchstone of the Fourth Amendment is reasonableness. *U.S. v. Lewis*, 674 F.3d 1298, 1306-07 (11th Cir. 2012) (citation omitted). The reasonableness standard for purposes of the Fourth Amendment is that of an officer on the scene who must make "split-second judgments" in "uncertain, and rapidly evolving" situations. *Davis v. Apopka*, 78 F.4th 1326, 1335 (11th Cir. 2023). The Supreme Court

has repeatedly held that a determination of reasonable suspicion is based on the totality of circumstances which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion has been recognized as "somewhat abstract" and the Court has "deliberately avoided reducing it to 'a neat set of legal rules[.]'" *Id.* at 274 (citing *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).

Darling has failed to allege what constitutional violation is based upon an officer sharing information with a fellow officer on the scene. Nevertheless, the totality of the circumstances contemplates cumulative information and officers that draw on that and on their training and broad experience to make determinations. *Arvizu*, 534 U.S. at 273. Given the parameters of totality of the circumstances, there is no indication an officer may not rely on statements shared with him or her by a fellow officer upon arrival at the scene. Moreover, Darling concedes he is without certain information with respect to what Zavaleta believed or shared as stated in his Complaint: Zavaleta and Quintero had "a brief conversation that neither Plaintiff nor his friends are privy to." ECF No. [1] ¶ 27. Finally, the arrest affidavit which Darling references and cites to at several points in his Complaint may provide insight into the reasonable suspicion the officers had leading to the pat down search, but it was not filed as an exhibit. Therefore, there is an insufficient basis to assert that "any statement" Zavaleta made to Quintero was a false statement that caused Quintero to conduct an unlawful pat down search.

An "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). As Darling conceded, Zavaleta

believed that one of the friends in the group possessed a firearm. ECF No. [1] ¶¶ 9, 22, 68, 70. Zavaleta's articulated belief that DeJesus had a firearm and pointed it at others does not mean that based upon the totality of the circumstances, there could be no reasonable suspicion that others may have possessed a firearm, or that his or others' safety was in danger. Pursuant to *Terry*, "in determining whether the officer acted reasonably . . . due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27. Accordingly, Count 2 must be dismissed.

### a) Consent: Counts 2 – 5

Darling's allegations in Counts 2 – 5 that he did not consent to the search fails as a matter of law. ECF No. [1] ¶¶ 78, 91, 94, 119. Darling states he "acquiesced" to the pat down search but did not consent. He acquiesced "because of [Quintero and Zavaleta's] show of authority, and the fact that they were both armed law enforcement officers telling, not asking [Darling] and his friends that they are going to be pat searched." *Id.* ¶ 33. Although Darling alleges there was a show of authority and the officers were armed, there are no allegations of force or threat of force employed to persuade him to consent. Consent is voluntarily given when it is "not the result of duress or coercion, express or implied." *Schneckloth v Bustamonte*, 412 U.S. 218, 248 (1973).

Acquiescence based upon the fact that one is confronted by a law enforcement officer alone is insufficient to find the consent was not voluntary. More is needed. *See Bumper v. North Carolina,* 391 U.S. 543, 550 (1968) ("[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion."). To determine whether a search of an individual who is not in custody is voluntary requires a case-by-case analysis based on the totality of the circumstances. *Schneckloth*, 412 U.S. at 227; *U.S. v. Moore*, No. 21-14210,

2023 WL 1434181, at *3 (11th Cir. 2023). Relevant factors include "the defendant's custodial status, the presence of coercive police procedure, the extent and level of a defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.'" *Moore*, 2023 WL 1434181, at *3 (quoting *United States v. Spivey*, 861 F.3d 1207, 1213 (11th Cir. 2017)). Still, "the absence of official coercion is the *sine qua non* of effective consent." *Hubbard v. Haley*, 317 F.3d 1245, 1253 (11th Cir. 2003) (citations omitted). *See Moore*, 2023 WL 1434181, at *2 ("Coercion includes intimidation, threats and physical or psychological abuse. Coercion is more easily found if the person consenting to the search has been placed under arrest. Interrogations of 'exhaustively long duration' weigh against the voluntariness of consent.") (citations omitted).

In *Moore*, the court found there was no coercion, in part, as the detained individual was able to move in his yard, was not handcuffed, there were no threats, intimidation, physical or psychological abuse, and the questioning was not "exhaustively long." *Moore*, 2023 WL 1434181, *2 (citation omitted). Here, while Darling alleges he was told to stay seated, he has not alleged that he was in custody, cuffed, intimidated, threatened, or subject to physical or psychological abuse, and he did not allege that he was interrogated or even held for an "exhaustively long duration." While Darling states that he did not consent to the search, under prevailing case law, the facts support that his consent was voluntary in Counts 2-5.

   **iv. Count 3: Unlawful Pat Down Search**

The factual allegations underlying Count 3 are like those in Count 2: Darling alleges that Quintero violated Darling's Fourth Amendment rights by conducting the pat down search without articulable facts to support a reasonable belief that Darling possessed a firearm. ECF No. [1] ¶ 85. The Complaint alleges that Quintero received all information as to the circumstances of Darling's

detention from Zavaleta, and if information as to Darling's actions had been truthfully conveyed, a reasonable suspicion that Darling had a firearm or weapon was not justified. *Id*. ¶¶ 84-85. Finally, Darling alleges the available information only permitted a belief that he was a potential victim of a crime, not that there was reasonable suspicion to conduct a pat down search upon him. *Id*. ¶ 88.

Reasonable suspicion is based on the totality of circumstances which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002). While reasonable suspicion requires more than a hunch, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence." *Id*. at 274. As established in *Terry*, a search on the outer clothing of a person "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety[.]" *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Finally, innocent acts taken together may warrant further investigation. *Arvizu*, 534 U.S. at 275.

Darling concedes he did not hear the information shared between Zavaleta and Quintero on the scene before the officer told the group they would be pat searched. Darling also failed to attach the arrest affidavit to the Complaint which could provide insight into what inferences were drawn by the officers based on the information available at the time as to reasonable suspicion leading to the pat down search upon Darling. Furthermore, Darling's assertion that he was a potential victim of a crime does not rule out the possibility that the officers may have had reasonable suspicion to believe he was in possession of a firearm. Finally, the Complaint does not

12

indicate that the initial encounter between Zavaleta and the individual served to dispel a reasonable fear for his or others' safety where one of the young men in the group launched "into a length tirade [and] totally and utterly disrespect[ed] Zavaleta" and Zavaleta told Darling to "calm down." ECF No. [1] ¶¶ 19, 24. Based on these factual allegations, Darling fails to provide sufficient information to assert that Quintero was without reasonable suspicion to conduct the pat down search.

### a) Scope of the Search

Darling raised an alternative claim for exceeding the scope of a permissible search in the event this Court finds the search was lawful. ECF No. [1] ¶¶ 93-99. Here, Darling alleges the search was improper because the only reasonable weapon Quintero could have searched for was a firearm, which could not have been concealed such that Darling's groin should have been tugged. *Id*. ¶ 95.

There is no requirement that an officer be confined to only search for one type of weapon. It is understood "that a protective search for weapons. . . constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person." *Terry v. Ohio*, 392 U.S. 1, 26 (1968). A search for weapons "limited to the outer clothing. . . in an attempt to discover weapons that might be used against [an officer]" is reasonable under the Fourth Amendment. *Id*. at 30. Here, while Darling opposes where he was touched, as alleged, the search was brief, conducted from the outside of the clothing, and prevailing case law allows for some amount of intrusion during a pat down search. Darling has not set forth sufficient basis to claim the search exceeded the bounds of permissible scope, and there is no support for the argument that the only reasonable search could be for a firearm and not a weapon, generally. Accordingly, Count 3 is due to be dismissed.

> v. **Count 4: Excessive Force Claim**

Under Count 4, Darling alleges that both Quintero and Zavaleta used excessive force against him, in violation of his Fourth Amendment rights. Darling argues that when he attempted to end the pat down search, Quintero and Zavaleta slammed him into a wall and then handcuffed him, resulting in an abrasion, a contusion, and a cut on his chest. ECF No. [1] ¶¶ 98, 99. Darling alleges he did not consent to the pat down search, he did not pose a threat to anyone, and claims there was a lack of reasonable suspicion that he possessed a firearm, making "any search" unlawful and "[a]ny force utilized. . . to effectuate the unlawful search by definition excessive." *Id*. ¶¶ 96-101.

Upon these allegations, Count 4 must be dismissed. As already discussed, the facts do not support that the pat down search was unlawful. Darling conceded that he first attempted to terminate the search by stepping away from the officer. The officer then prevented Darling from leaving, at which point Darling panicked and once again tried to pull away. ECF No. [1] ¶¶ 35-49. It was then that the officers "slammed" Darling into a wall which subdued him and thereafter, the officers continued and then concluded the search. *Id*. ¶ 40-41.

The events as alleged do not rise to a constitutional violation. Fourth Amendment jurisprudence has established "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. at 396 (citing *Terry,* 392 U.S. at 20-22). "[N]ot every push or shove. . . violates the Fourth Amendment." *Id*. Reasonableness must be "judged from the perspective of a reasonable officer on the scene" allowing for the fact that officers must make split-second decisions in uncertain and rapidly evolving situations; these permissible decisions include how much force is necessary. *Id*. 396-97. However, the Eleventh Circuit has held that an officer violates the Fourth

Amendment when "gratuitous force is used against a suspect who is secure, not resisting, and not a threat to the officer or other officers." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021); *Cf. Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (holding "a reasonable officer could not possibly have believed that he [] had the lawful authority to take her to the back of her car and slam her head against the trunk *after* she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed. Once an arrestee has been fully secured, such force is wholly unnecessary to any legitimate law enforcement purpose."). Correspondingly, the Eleventh Circuit has also held "that it may be reasonable for an officer to use force against a suspect who is resisting and not subdued." *Johnson*, 18 F.4th at 1272. (citing *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1351, 1355 (11th Cir. 2015)).

Here, Darling was unsecured and resisting the search. In his first attempt to pull away during the pat down search, Quintero grabbed Darling and prevented him from terminating the search. It is only upon Darling's second attempt to pull away that force was applied. Based on the allegations, the force applied ceased as soon as Darling was subdued, and handcuffs were placed on him after the force was applied. This is permissible pursuant to Fourth Amendment jurisprudence. The encounter as alleged does not raise a constitutional violation.

Darling is incorrect that "any use of force [was] by definition excessive." ECF No. [1] ¶ 101. In *Graham*, the Court held that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" 490 U.S. 386 at 395. The reasonableness standard is "judged from the perspective of a reasonable officer on the scene[.]" *Id*. at 396. Here Darling alleges he was the second in the group to get a pat down search, there was already "lengthy tirade" against Zavaleta for detaining the group, and

onlookers were starting to convene nearby. This points to a tense and evolving circumstance, and consistent with *Graham*, a quick decision was made to use some amount of force. Finally, as the Eleventh Circuit has made clear, it is not force, but the "gratuitous use of force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers" that rises to a constitutional violation under the Fourth Amendment. *Johnson*, 18 F.4th at 1272. For example, use of force has been found not excessive against a person lying face down on the ground but still able to "wrestle his hand loose and push [the officer's] foot away." *Id*. at 1273 (citing *Crosby v. Monroe Cnty*., 394 F.3d 1328, 1334-35 (11th Cir. 2004)). Accordingly, the events as alleged do not rise to a constitutional violation for an excessive use of force and Count 4 must be dismissed.

### vi.   Count 5: False Arrest for Disorderly Conduct and Resisting Arrest Fails

Under Count 5, Darling alleges that his use of profanities "was virtually non-existent, and others used the majority of the profanities and threatened to sue the officers." ECF No. [1] ¶¶ 102-104. Darling argues that there was no arguable probable cause to arrest him for disorderly conduct. *Id*. ¶ 110. Darling maintains that the pat down search was unlawful, Quintero and Zavaleta were not in "lawful execution of their duty" and therefore could not arrest him, "for interfering with the officer's unlawful actions." ECF No. [1] ¶¶ 120-123.

The Court has already concluded that Darling has failed to sufficiently allege a constitutional violation for conducting a pat down search based upon an objectively reasonable standard as required by *Graham v. Connor*.

According to the Complaint, Darling was arrested for disorderly conduct and resisting arrest without violence. ECF No. [1] ¶ 55. Although the arrest affidavit has not been filed along with the Complaint, Darling cites to the allegations in the affidavit that he yelled profanities at Zavaleta while he waited for his back up (Quintero) to arrive; he yelled he would sue Zavaleta before the pat down search began; Darling was told to "relax and stop cursing" but did not and

instead continued to yell profanities; finally, Zavaleta noted onlookers and residents left their homes to watch "as I waited for my back up units to arrive to conduct officer safety pat downs on the males." *Id.* ¶ 56.

Pursuant to Florida Statute § 877.03, a person is guilty of disorderly conduct for committing acts that "affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct." Fla. Stat. § 877.03. A person is guilty of resisting arrest without violence if they "resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer." Fla. Stat. § 843.02.

To state a claim for false arrest, a plaintiff must allege that he was arrested without a warrant or probable cause. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). Probable cause exists when the facts and circumstances would lead a prudent person to believe that an individual has violated the law, is violating the law, or will violate the law. *Id.* (citations omitted). The existence of probable cause is a bar to an action for false arrest under 42 U.S.C. § 1983. *Blackshear v. City of Miami Beach*, 799 F. Supp. 1338, 1345 (S.D. Fla. July 26, 2011) (citing *Kingsland*, 382 F.3d at 1226). "Probable cause is measured at the time of arrest, not at some point before or after." *Martin v. Miami Dade Cnty.*, No. 23-10841, 2024 WL 1434329, at *4 (11th Cir. 2024) (citing *Davis v. Apopka*, 78 F.4th 1326, n.3 (11th Cir. 2023)).

Darling concedes that he engaged in the disorderly conduct alleged in the arrest affidavit. Furthermore, Darling provides that "each of the four young men. . . spoke to [] Zavaleta is [sic] a derogatory or insulting manner. . . or otherwise engaged in some form of disrespectful conduct." ECF No. [1] ¶ 57. Darling's issue is that he was the only one of the four arrested. However, that does not bear on the officer's probable cause as to his conduct resulting in his arrest. Finally,

because Darling has conceded to facts that his conduct was disorderly, he has failed to state a claim for false arrest as under an objectively reasonable standard, an officer on the scene would have probable cause to find that his conduct was disorderly, which therefore is a bar to his claim for false arrest under § 1983.

With respect to interference with an arrest, the thrust of Darling's allegation is that he could not have interfered with an arrest if the officer was not in the lawful performance of his duties. ECF No. [1] ¶ 122. Darling has not provided factual allegations to support this claim. Moreover, the allegations do not indicate that the officers performed their duties unlawfully, and the claim is insufficient. Furthermore, by alleging that the officers were not lawfully performing their duties and therefore it was not possible to interfere with an arrest, Darling has presented a bare, conclusory allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.") (alteration in original)). Accordingly, due to these deficiencies, Count 5 for false arrest must be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Complaint, **ECF No. [1]** is **DISMISSED without prejudice** for failure to state a claim for relief.

2. The Clerk of Court is directed to **CLOSE** this case. If Plaintiff files a new Complaint, he must do so by opening a new case.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**.

Case No. 24-cv-21541-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 15, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Santino T. Darling
1595 NE 33rd Road, Unit #104
Homestead, FL 33033
PRO SE